An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-992

Filed 1 July 2026

Forsyth County, No. 23 CR 706582-330

STATE OF NORTH CAROLINA

v.

DALPHNE SHERBRINA PACE, Defendant.

Appeal by Defendant from judgment entered by Judge Lora C. Cubbage in Forsyth County Superior Court. Heard in the Court of Appeals 26 March 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Liliana Lopez, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Sterling P. Rozear, for Defendant.*

MURRY, Judge.

Dalphne S. Pace (Defendant) appeals from judgment entered upon a jury verdict convicting her of misdemeanor stalking. On appeal, Defendant argues that the trial court plainly erred by allowing Detective Mager, a lay witness, to opine on her guilt. Defendant also claims she received ineffective assistance of counsel (IAC) at trial. For the following reasons, this Court holds that the trial court did not err and that Defendant did not receive IAC.

## I.  Background

This matter arises out of an incident on 10 May 2023, during which law enforcement cited Defendant for the misdemeanor stalking of Junius Blackwell under N.C.G.S. § 14-277. *See* N.C.G.S. § 14-277.3A(c) (2025). Defendant appealed her district-court conviction for misdemeanor stalking to the superior court for a trial *de novo*. The record before this Court, including evidence presented at trial, tends to show the following:

Defendant and Blackwell previously had a sexual relationship that ended before Blackwell married his wife. After their relationship ended, Defendant began showing up uninvited to Blackwell's home and job sites. Despite Blackwell repeatedly asking her to stop contacting him, Defendant continued to follow Blackwell, appearing at stores he was visiting, his job sites, and his home. She also contacted Blackwell through messages, emails, and phone calls, and even began messaging his wife. When Blackwell blocked her number, Defendant would use alternate "fake" numbers to continue contacting him.

On 10 May 2023, Blackwell called the police after observing Defendant sitting outside his apartment complex. Detective Gregory J. Mager of the Winston-Salem Police Department arrived on the scene and spoke with both parties. Blackwell explained his ongoing issues with Defendant and showed Detective Mager numerous messages from Defendant. After reviewing those messages, Detective Mager charged Defendant with misdemeanor stalking. This matter came for trial *de novo* in superior

court on 15 December 2024.

At trial, Blackwell testified to calling the police on 10 May 2023 after observing Defendant sitting outside his apartment due to his fear that she would do "something retaliatory." The State admitted ten photographic exhibits showing Defendant's communications to Blackwell, including text messages stating that she was "at [his] door" and planned to "sit out there until he talks to her" and an email stating that he "cannot stop her from coming over there" and that she can "sit in that parking lot all day if she wants to and there is not a . . . thing he can do about it." (Brackets omitted.) Defendant did not object to any of these exhibits.

Detective Mager testified regarding his interaction with both parties, which had been recorded on his body-worn camera and was introduced into evidence and published for the jury. That footage tended to show the following: after arriving at the scene and speaking with Blackwell, Detective Mager asked Defendant why she parked outside Blackwell's residence, to which she replied that she planned to call Blackwell's wife to let her know why she was at Blackwell's residence and that she was dropping off a friend nearby. He then asked why she would be parked in front of Blackwell's apartment if her friend lives "over there," to which Defendant replied that she "can sit right here all [she] want[s]," that Blackwell "can't do nothing," and that she was "not bothering him." When Detective Mager explained that Blackwell did not want her at his residence, she responded that Blackwell "is not [her] dad" and "can't stop [her] from coming over here." Defendant admitted to contacting Blackwell and

stated that she intended to continue messaging Blackwell's wife. After Detective

Mager repeatedly instructed Defendant to "cease any and all contact" with Blackwell

and his wife, he warned her that she was "bordering the line of stalking" and would

be charged "if she continue[d parking] in front of his apartment." Defendant replied,

"Okay," stating that she "told" Blackwell to press charges. Officer Mager clarified, "So

you want to be charged with stalking?," to which Defendant replied that Blackwell

"can do what he want to do[,] I don't care no more." At that point, Detective Mager

asked Blackwell if he wanted to press charges, and he stated that he did. Detective

Mager cited Defendant for misdemeanor stalking and instructed her not to contact

Blackwell or return to his residence.

On cross-examination, defense counsel asked Detective Mager about this

interaction as follows:

> [DEFENSE COUNSEL:] And then we also hear you on the video, you say to [Defendant] that she is bordering on stalking. Correct?
>
> [DETECTIVE MAGER:] Yes, ma'am.
>
> [DEFENSE COUNSEL:] So you didn't think it was stalking in that moment.
>
> [DETECTIVE MAGER:] Well, in these moments, right, we all have to consider the criminal elements of the crime. We're getting a lot of information. *In my opinion, I had hit all of the elements*, but I wanted to take a second and review everything at that point.

(Emphasis added.) Defense counsel did not object to Detective Mager's answer to her

question. On redirect examination, the State asked Detective Mager about the same

interaction as follows:

> [STATE:] And on cross-examination you were asked about the basis that you issued the citation. Because [Blackwell] wanted you to is the reason why you issued the citation. Was there any other information or basis that you also decided to initiate a citation?
>
> [DETECTIVE MAGER:] Yes, ma'am. *All the criminal elements had been met in my opinion of the continued harassment*. I have phone calls and messages via email over a period of extended time, over 4/22, 4/11, 5/9, and showing up on 5/10, as well as [Defendant's] other statements later of other times that she had shown up around him. That was the basis of the charge itself. And then his confirming that he wanted to proceed with charges confirmed that I was going to issue a citation at that point.

(Emphasis added.) Defendant did not put on evidence or object to the State's question or to Detective Mager's response.

After fourteen minutes of deliberation, the jury found Defendant guilty of stalking. The trial court sentenced Defendant to 75 days in the custody of the Forsyth County Sheriff's Department, suspended with a 7-day active term and 24 months of supervised probation. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty). And because "the cold record reveals that no further investigation is required," this Court also has jurisdiction to determine Defendant's IAC claim on direct review. *State v. Fair*, 354 N.C. 131, 166 (2001).

### III.    Analysis

On appeal, Defendant argues that the trial court plainly erred by allowing Detective Mager to opine on her guilt and that she received IAC at trial. For the following reasons, we hold that the trial court did not err and that Defendant did not receive IAC.

### A.  Lay-Witness Testimony

Defendant concedes her failure to preserve the admissibility of the challenged testimony for appellate review, *see State v. Reber*, 386 N.C. 153, 157 (2024), but argues that the trial court plainly erred "by allowing Detective Mager to give an improper opinion of [Defendant's] guilt," *see* N.C. R. App. P. 10(a)(4). She suggests that Detective Mager's "opinion that [her] conduct met the elements of a criminal offense is a textbook example of an improper opinion, it was unfairly prejudicial, it probably changed the outcome of the case, and it requires a new trial." The State argues that Defendant waived her right to appellate review of this issue due to invited error. *See State v. Roseboro*, 344 N.C. 364, 373 (1996). For the following reasons, we agree with the State and hold that Defendant invited this error.

A defendant cannot prejudice herself through "error resulting from [her] own conduct." N.C.G.S. § 15-1443(c). As a result, "[s]tatements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *State v. Steen*, 226 N.C. App. 568, 575 (2013). Here, Detective Mager gave the challenged portion of his testimony on cross-examination.

The transcript shows that defense counsel elicited Detective Mager's testimony by asking whether he thought Defendant's actions amounted to the criminal offense of "stalking in th[e] moment" that he spoke with her on video. Defendant concedes as much, recognizing that he "provided his improper opinion twice, first during cross-examination and then again during redirect." Even if Detective Mager's testimony would have otherwise been error, Defendant invited it and thus she cannot be prejudiced as a matter of law. *See State v. Chatman*, 308 N.C. 169, 177 (1983) (invited error where defense counsel elicited information on cross-examination of State's witness because "[d]efendant cannot invalidate a trial . . . by eliciting evidence on cross-examination which he might have fully excluded if the same evidence had been offered by the State"). Defendant also "incorporated" the challenged portion of Detective Mager's "testimony into her closing argument[ ]," further supporting our conclusion that Defendant invited this error. *State v. Gay*, 334 N.C. 467, 485 (1993) (invited error where "defendant herself introduced this testimony [and] incorporated [it] into her closing arguments"). Based on these considerations, she has waived any appellate review of Detective Mager's testimony. *See State v. Crane*, 269 N.C. App. 341, 343 (2020).

## B. Ineffective Assistance of Counsel

Defendant also claims that she received IAC because her counsel did not object to the challenged portion of Detective Mager's testimony. To successfully bring an IAC claim, Defendant must show both that (1) her counsel's deficient performance

"fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord State v. Braswell*, 312 N.C. 553, 562–63 (1985) (lockstepping relevant constitutional standard for IAC claims). We review IAC claims *de novo. See State v. Wilson*, 236 N.C. App. 472, 475 (2014). For the following reasons, we hold that Defendant did not receive IAC.

To satisfy the prejudice requirement of IAC, a defendant "must show . . . a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Allen*, 360 N.C. 297, 316 (2006) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is that which is "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, for which the likelihood of "a different result must be substantial, not just conceivable," *State v. Lane*, 271 N.C. App. 307, 313–14 (2020) (quotation omitted). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we need not decide whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

As discussed above, even without Detective Mager's testimony, the State offered ample additional evidence through other physical and testimonial evidence, including Detective Mager's body-worn camera footage capturing Defendant admitting to contacting Blackwell and copies of Defendant's messages to Blackwell. Any failure by defense counsel to object to Detective Mager's testimony would not

have "undermine[d] confidence" in the jury's verdict, *Strickland*, 466 U.S. at 694, or created "a reasonable probability" of a different result, *Allen*, 360 N.C. at 316. Because Defendant has thus failed to show prejudice, we hold that she did not receive IAC.

## IV.  Conclusion

For the following reasons, this Court holds that the trial court did not err by allowing Detective Mager's testimony and that Defendant did not receive IAC.


NO ERROR.

Judges ARROWOOD and GORE concur.

Report per Rule 30(e).